Lorenzo BENITEZ *v.* STATE of Arkansas

CA CR 05-1293                                              257 S.W.3d 902

Court of Appeals of Arkansas
Opinion delivered May 30, 2007

*B. Kevin Holland,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Carolyn Boies Nitta,* Ass't Att'y Gen., for appellee.

L ARRY D. VAUGHT, Judge. Lorenzo Benitez was convicted of two counts of possession of controlled substances with the intent to deliver. He was sentenced to two consecutive eighty-year terms in the Arkansas Department of Correction. Benitez raises

two issues on appeal — that there was a lack of sufficient evidence to support the convictions and that the trial court erred in denying his motion to suppress evidence. We affirm.

On January 26, 2003, at approximately 10:05 p.m., Arkansas State Police Officer Jeff Thomas, along with his canine partner Sida, was patrolling Interstate 40 in Miller County when he observed a Ford Explorer with a Texas license plate cross the fog line and travel onto the shoulder on three occasions in less than a one-mile stretch. Officer Thomas initiated a traffic stop, which was videotaped.[1] Officer Thomas asked for and received the driver's licenses of the driver, Martha Quirros Mojica, and the passenger, Benitez. Through questioning, Officer Thomas learned that Mojica was the owner of the Explorer and that Benitez was Mojica's brother-in-law. At trial, Officer Thomas testified that Mojica advised that she and Benitez were traveling to Arkansas while Benitez advised they were traveling to Indianapolis.

Officer Thomas returned to his patrol vehicle to verify the information from Mojica's and Benitez's licenses. While waiting for a response from dispatch, Officer Thomas wrote a warning ticket for Mojica for improper lane usage; however, he did not give it to her at that time. Dispatch advised Officer Thomas that the Explorer was registered to Mojica; that Mojica had no warrants or criminal history; and that Benitez had no outstanding warrants but did have a criminal history of weapons violations, terroristic threatening, and possession of a controlled substance.

Officer Thomas then asked Mojica and Benitez to exit the vehicle and wait on the side of the road. The officer requested permission from Mojica to search the vehicle, and Mojica consented. Before searching the vehicle, Officer Thomas walked Sida around it, and she alerted at numerous areas of the vehicle, including the rear. Officer Thomas then explained to Mojica and Benitez that Sida's alert was an indication of the presence of drugs and that gave him probable cause to search the vehicle. He further advised them that they were no longer free to leave in the vehicle. After a lengthy and laborious search,[2] which included the use of a pry-bar to open a false compartment in the rear of the vehicle,

[1] Although the videotape was shown to the jury at trial, Benitez's appellate counsel stated in his brief that he was unable to view the videotape as it was defective. This court was also unable to view the videotape.

[2] Officer Thomas testified the entire stop lasted almost two hours.

Officer Thomas found three large bundles wrapped in electrician's tape. The state crime laboratory later confirmed that two of the bundles were cocaine, and one was heroin.[3] After discovering the drugs, Officer Thomas returned to where Mojica and Benitez had been standing on the side of the road to find only Mojica present. Benitez had fled the scene. Benitez was located by the United States Customs Service in Texas in October 2004.

Prior to trial, Benitez moved to suppress the evidence seized by Officer Thomas on the grounds that the search and seizure was unlawful under both the United States and the Arkansas Constitution. The State responded that Benitez lacked standing to contest the search and that the search was legal. The trial court denied the motion. Benitez's directed-verdict motions at trial challenged the sufficiency of the evidence that he possessed the drugs with the intent to deliver. The trial court denied his motions.

Benitez first argues that the evidence was insufficient to prove that he was in possession of the drugs found in the Explorer. He argues that (1) the drugs seized from the Explorer were not in plain view, nor were they found in his personal effects or in proximity to him; (2) there is a lack of evidence demonstrating that he was the lawful owner of the Explorer or had authorized possession of it; (3) there was no evidence that, at the time of the stop, Benitez was acting suspiciously; and (4) there was no fingerprint evidence linking him to the drugs or to the false compartment in the vehicle. Benitez contends that the only evidence presented by the State on the issue of possession was that Benitez was in a vehicle that contained the drugs and that he fled from the scene.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993). The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Id.* On appeal, we review the evidence in the light most favorable to the appellee and sustain the conviction if there is substantial evidence to support it. *Id.* Evidence is substantial if it is

---

[3] One of the packages weighed 1002.3 grams and was 83.8% cocaine. The second package weighed 103.5 grams and was 84.4% cocaine hydrochloride. The third package weighed 974.2 grams and was 51.9% heroin hydrochloride.

of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.*

In order to prove a defendant is in possession of a controlled substance, constructive possession is sufficient. *Littlepage v. State*, 314 Ark. at 366, 863 S.W.2d at 279. Neither exclusive nor actual physical possession of a controlled substance is necessary to sustain a charge. *Id.* Constructive possession can be implied when it is in the joint control of the accused and another. *Id.* However, joint occupancy alone is not sufficient to establish possession or joint possession. There must be some additional factor linking the accused to the contraband. *Id.* In other words, there must be some evidence that the accused had knowledge of the presence of the contraband in the vehicle. *Malone v. State*, 364 Ark. 256, 217 S.W.3d 810 (2005).

The Arkansas Supreme Court has enumerated linking factors to be considered in cases involving vehicles occupied by more than one person: (1) whether the contraband is in plain view; (2) whether the contraband is found with his personal effects; (3) whether it is found on the same side of the car seat as the accused was sitting or in near proximity to it; (4) whether the accused is the owner of the vehicle, or exercises dominion and control over it; (5) whether the accused acted suspiciously before or during arrest. *Id.*

Benitez is correct that some of the linking factors are not present in this case. For example, the drugs seized by Officer Thomas were not in plain view, were not on Benitez's person, were not in or near his personal belongings, and were not in close proximity to him. Officer Thomas testified that while Benitez's response regarding the destination of their trip may not have been consistent with Mojica's response, Officer Thomas never witnessed Benitez behaving suspiciously. Lastly, the evidence demonstrated that the Explorer belonged to Mojica.

Nevertheless, the substantial evidence in this case supports a conclusion that Benitez acted suspiciously before arrest to a degree sufficient to link him to the contraband in the vehicle. This pivotal evidence was Benitez's behavior just prior to Officer Thomas's discovery of the drugs. Benitez waited for more than an hour on the side of the road while Officer Thomas searched the vehicle and was still standing on the side of the road with Mojica when Officer Thomas retrieved the pry-bar from his patrol car. But when Officer Thomas started to pry open the false compartment (containing the drugs) Benitez fled from the scene.

Additional facts surrounding Benitez's flight from the scene link him to the drugs in the vehicle. Benitez left the scene without telling the officer. Mojica testified that Benitez "ran." When Benitez fled, he was a three-hour drive from his home — somewhere on the side of the highway surrounded by woods. It was late at night and cold. He fled the scene without his driver's license and personal belongings. He left his female traveling companion, a family member, on the side of the road with a law-enforcement official who had already advised that he believed narcotics were in the vehicle.

We acknowledge that the sole "linking factor" in this case was the suspicious activity of Benitez prior to arrest. This factor alone would not necessarily support a conviction for constructive possession. However, the facts in this case are unique in that Benitez's suspicious activity was not only undisputed (Officer Thomas and Mojica both testified that Benitez fled the scene late in the search of the Explorer, and he was apprehended twenty months later by United States Customs), but it was also objective in nature rather than based upon the subjective beliefs of a law-enforcement officer. This is not a case where suspicion arose from a law-enforcement officer's subjective observations of an accused, e.g., the accused seemed nervous, was fidgeting and/or sweating, or the like. Accordingly, we hold that Benitez's perfectly-timed flight was sufficiently compelling to show Benitez had knowledge that contraband was secreted inside the false compartment of the vehicle.

Next, Benitez contends that the trial court erred in denying his motion to suppress evidence based on an illegal search. In reviewing the trial court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004).

The State argues that Benitez did not have standing to contest the search. The rights secured by the Fourth Amendment are personal in nature, therefore, a defendant must have standing to challenge a search on Fourth Amendment grounds. *Littlepage*, 314 Ark. at 368, 863 S.W.2d at 280. Whether a defendant has standing depends upon whether he manifested a subjective expectation of

privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *Id*. It is well settled that a defendant, as the proponent of a motion to suppress, bears the burden of establishing that his Fourth Amendment rights have been violated. *Ramage v. State*, 61 Ark. App. 174, 177, 966 S.W.2d 267, 269-70 (1998).

A person's Fourth Amendment rights are not violated by the introduction of damaging evidence secured by the search of a third party's premises or property. *Id*. at 177, 966 S.W.2d at 269. Further, a defendant has no standing to question the search of a vehicle unless he can show that he owns the vehicle or that he gained possession of it from the owner or someone else who had authority to grant possession. *Id*. This court will not reach the constitutionality of a search where the defendant has failed to show that he had a reasonable expectation of privacy in the object of the search. *Id*.

Here, the record does not support Benitez's standing to contest the search. Benitez was not driving the Explorer when it was pulled over. There is no evidence that Benitez owned the Explorer or that the rightful owner gave him possession of the vehicle. Benitez did not testify at the suppression hearing and assert a proprietary or possessory interest in the vehicle necessary to establish standing, although he had the right to do so without danger of self-incrimination. *See Ramage, supra*. In fact, Benitez argued in his motion for directed verdict and in his brief on appeal that it was Mojica that owned and operated the Explorer — not him.

Benitez relies upon *Fernandez v. State*, 303 Ark. 230, 795 S.W.2d 52 (1990), for the proposition that "if either driver or passenger is owner of the car, and other facts demonstrate a reasonable expectation of privacy, then the aggrieved defendant can claim Fourth Amendment protection from unreasonable searches." He contends that he did have a reasonable expectation of privacy in the vehicle as he was traveling with his sister-in-law, the vehicle's owner, was an invited guest, and he had his personal belongings in the cargo area.

Benitez's interpretation of *Fernandez* is incorrect as the holding in that case does not state or even imply that if one occupant of a vehicle is the owner of the vehicle or had lawful possession of it, then other occupants have standing to challenge a

search.[4] Moreover, both our court and our supreme court have held contrary to Benitez's position. *See Dixon v. State*, 327 Ark. 105, 937 S.W.2d 642 (1997) (holding that passenger had no standing to contest search even though he was traveling with the driver, who owned vehicle); *Swan v. State*, 94 Ark. App. 115, 226 S.W.3d 6 (2006) (holding that passenger lacked standing to contest search of vehicle where driver of vehicle, one with possessory interest in vehicle, consented to search).

Because of the lack of evidence that Benitez owned or had lawful possession of the Explorer, we hold that he had no expectation of privacy in the vehicle, and accordingly, he had no standing to challenge the search as unconstitutional.

Affirmed.

MARSHALL and HEFFLEY, JJ., agree.

---

[4] Our supreme court in *Fernandez* held that neither the driver of the vehicle nor the passenger showed that they lawfully owned or possessed it, and therefore, the passenger had no reasonable expectation of privacy and no standing to contest the search. *Fernandez*, 303 Ark. at 233, 795 S.W.2d at 53.